IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GERALD ROGERS, dba,
Cleanco,

                                        Civil No. 04-3024-PA

            Plaintiff,

                                                ORDER

      v.

QWEST CORPORATION, formerly
known as U S West Communications,
et al.,

            Defendants.


PANNER, District Court Judge.

      Plaintiff's Third Amended Complaint alleges four claims for

relief against: 1) Defendant Qwest Corporation (defendant Qwest)

for treble damages under ORS 756.185 for gross negligence and

failure to provide adequate service under ORS 757.020 (Third

Amended Complaint at 7); 2) Defendant Qwest Dex, Inc. (defendant

Dex) for negligence for erroneous Yellow Pages listings (Id. at

10); 3) Defendant Dex for breach of an implied contract for

erroneous Yellow Pages listings (Id. at 12); and 4) Defendant Qwest for breach of an implied contract for erroneous White Pages listing (Id. at 13).  Plaintiff seeks non-economic damages, treble damages for all prior economic losses, prior and future economic damages, attorney fees, and costs.  (Id. at 14-16).  This court has jurisdiction pursuant to 28 U.S.C. § 1332.  Defendants move to dismiss plaintiff's complaint (#27).

## I.  <u>FACTS</u>

The following paragraphs paraphrase relevant portions of plaintiff's third amended complaint:

Plaintiff, Gerald Rogers, was the sole proprietor and owner of a carpet cleaning business, which operated in Jackson County, Oregon under the assumed business name of Cleanco.  (Third Amended Complaint ¶1).

Defendant Qwest operates a telephone service in Jackson County, Oregon, and provides White Pages listings in a telephone directory book.  (Id. at ¶2).  This White Pages telephone directory is distributed to defendant Qwest customers and to the public in areas where defendant Qwest provides telephone service, including Jackson County, Oregon.  (Id.).  Defendant Qwest is a public utility subject to the regulation of the Oregon Public Utility Commission (PUC).  (Id.).

ORDER - 2

Defendant Dex publishes Yellow Pages listings in a telephone directory book, and the Yellow Pages telephone directory book also includes Defendant Qwest's White Pages listings. (Id. at ¶3). The Yellow Pages were distributed in areas where defendant Qwest did business, including Jackson County, Oregon. (Id.). Businesses could display advertising and/or place listings for business telephone numbers in the Yellow Pages. (Id.). Businesses having a White Pages listing were also provided a Yellow Pages listing as an integral part of the telephone services provided by defendant Qwest. (Id.).

Defendant Dex is a wholly owned subsidiary of Defendant Qwest. (Id. at ¶4). The defendants worked closely together and coordinated the publication of telephone numbers for businesses in the White Pages and the Yellow Pages. (Id.).

In June, 2000, the telephone line to plaintiff's residence was disconnected during the course of repairs in the area. (Id. at ¶6). For several weeks, plaintiff was without the use of his business telephone line to his residence. (Id.). After several complaints, a Qwest service repair employee discovered that plaintiff's business line had not been reconnected after the repair work. (Id.).

The Qwest service repair employee reconnected plaintiff's business line and advised plaintiff that he did not need a business line for his business, since plaintiff was a sole proprietor who

ORDER - 3

operated his business out of his home. (Id.). To avoid paying the higher charge for the business telephone line, plaintiff advised Qwest in June 2000, that he decided to stop using the business line and plaintiff obtained a new residential number to use for his business. (Id.).

Plaintiff requested that any incoming calls to his prior business line be transferred to his new residential number. (Id.). Defendant Qwest advised plaintiff that it was not possible to transfer the calls, and that his new number would be published in the March 2001 telephone directory book. (Id.). Defendant Qwest advised plaintiff that his new number would be listed in the White Pages alphabetically under Cleanco and in the Yellow Pages under carpet cleaning businesses. (Id.). Defendant Qwest advised plaintiff that he did not need to undertake any further actions to assure the listings in the March 2001 telephone directory book. (Id.).

In March 2001, the defendants' new telephone directory book did not list plaintiff's new business phone number in either the White Pages or the Yellow Pages, but instead it listed his old disconnected business number. (Id. at ¶7). As a result, when customers called the old business number, they were informed that the number had been disconnected. (Id.).

ORDER - 4

Shortly after the publication of the March 2001, telephone directory, plaintiff contacted defendants to remedy the erroneous listing problem. (Id. at ¶8). Defendants did not take any action to remedy the problem. (Id.). Plaintiff was assured that the problem would be corrected in the March 2002 telephone directory. (Id.).

A competing telephone directory, published later in 2001 and which gathered its listings in part from defendants' telephone directory, also listed plaintiff's business under the disconnected business number. (Id. at ¶9). Customers using this competing telephone directory were also informed that plaintiff's old business number had been disconnected. (Id.).

When defendants' published their March 2002 telephone directory, the problem with the erroneous listing of plaintiff's Cleanco business number was not fully corrected. (Id. at ¶10). The Yellow Pages listing was correctly listed, but the White Pages listing still listed plaintiff's disconnected business number. (Id.)(emphasis added). The error in the White Pages listing was translated into the competing telephone directory, which was published later in 2002. (Id. at ¶11).

Plaintiff complained to defendants about the erroneous White Pages listing in March 2002 and asked defendants to take steps to counteract the problem. (Id. at ¶12). Defendants failed to take any steps to counteract the problem. (Id.). On September 9, 2002,

<u>plaintiff filed a voluntary petition for bankruptcy.</u>  (Id. at ¶15)(emphasis added).

In January 2003, defendants advised plaintiff that the erroneous White Pages listing would be corrected in the March 2003 directory.  (Id. at ¶12).  The March 2003 directory contained the erroneous White Pages listing.  (Id. at ¶13).

In plaintiff's first claim, he alleges that defendants were grossly negligent in failing to correctly list his Cleanco business number in the White Pages in violation of ORS 757.020.  (Id. at ¶16).  Plaintiff alleges that defendants' acts and omissions represented a conscious indifference or reckless disregard of the rights of plaintiff to have a correct and accurate listing.  (Id.).  Most of the acts and omissions plaintiff relies upon to support his claim occurred before he filed bankruptcy.  (Id. at ¶19).

Plaintiff alleges that as a result of defendant Qwest's gross negligence he suffered $17,500.00 in economic damages, and he will continue to suffer economic damages due to the erroneous White and Yellow Pages listings.  (Id. at ¶20).  Plaintiff also claims he suffered non-economic damages in the amount of $100,000.00.  (Id. at ¶21).

Plaintiff seeks treble damages for all the economic damages plaintiff suffered thus far in the amount of $52,500.00, plus additional treble damages sustained by plaintiff until defendant Qwest corrects the erroneous White Pages listing or undertakes some

ORDER - 6

other reasonable action to mitigate plaintiff's losses.  (Id. at ¶22).  Plaintiff also seeks attorney fees and costs for this claim. (Id. at ¶23).

Plaintiff's second claim, entitled "Claim Against Defendant Qwest Dex for Negligence in Erroneous 'Yellow Pages' Listings", alleges that defendant Dex is not a public utility subject to regulation by the PUC.  (Id. at ¶25).  Defendants have a close interrelationship.  (Id.).  Business customers provided telephone service by defendant Qwest and having a White Pages listing for their businesses were also provided a listing in the Yellow Pages by defendant Dex under at least one business category for the subject business.  (Id.).  Based upon the close relationship between defendants and the joint publication of the telephone directory, a special relationship was created and existed between plaintiff and defendant Dex under which defendant Dex owed a duty of care to plaintiff for accurate and non-negligent placement of plaintiff's business telephone number listing in the Yellow Pages. (Id.).

Plaintiff alleges that defendant Dex breached its duty of care to plaintiff and was negligent in the publication of the March 2003 directory by failing to take reasonable steps to avoid the publication of plaintiff's former discontinued business number in the White Pages.  (Id. at ¶27).  Plaintiff also alleged defendant Dex breached its duty of care and was negligent by failing to take

ORDER - 7

reasonable and available steps to mitigate or avoid further harm and damage to plaintiff by placing an intercept message on incoming calls to plaintiff's old business number and redirecting this calls to plaintiff's new business number when it knew or reasonably should have known the erroneous listing of plaintiff's disconnected business number in the White and Yellow Pages published in March 2003. (Id.). Plaintiff seeks $11,667.00 in economic damages, future economic damages until the Yellow Pages listing is corrected, and damages for emotional distress. (Id. at ¶¶ 28 and 29).

In his third claim for relief, plaintiff alleges that defendant Dex impliedly contracted with plaintiff to correctly list his business telephone number in the telephone directory. (Id. at ¶31). Defendant Dex breached the implied contract. (Id. at ¶32). Plaintiff performed all conditions precedent on his part under the implied contract. (Id. at ¶33). As a result of defendant Dex's breach of the implied contract, plaintiff suffered economic damages in the amount of $11,677.00 and future economic damages until the listing is corrected in the White and Yellow Pages or reasonable steps are taken to mitigate those damages. (Id. at ¶34).

In his fourth claim for relief, plaintiff alleges that, as part of the contract to provide telephone service to plaintiff's business, defendant Qwest agreed to be regulated and subject to a tariff adopted by the PUC. (Id. at ¶36). The tariff applies to

ORDER - 8

all White Pages listings.  (Id. at ¶37).  Defendant Qwest breached the terms of the contract and the PUC tariff by failing to accurately and properly list plaintiff's new business number in the White Pages for the year 2003.  (Id. at ¶38).  Plaintiff performed all conditions precedent required of him under the implied contract.  (Id. at ¶39).  As a result of defendant Qwest's breach of the implied contract with plaintiff and the PUC tariff, defendant Qwest is liable to plaintiff for damages equal in amount to the charge made upon the plaintiff for his exchange service during the effective life of the March 2003 directory.  (Id. at ¶40).

## II.  LEGAL STANDARDS

Federal courts require notice pleading.  A complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that plaintiff can plead no set of facts in support of a claim.  California Dump Truck Owners Ass'n v. Associated Gen. Contractors of America, 562 F.2d 607 (9th Cir. 1977).  A complaint may be dismissed because of the lack of a cognizable legal theory or because insufficient facts are alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).  The court accepts plaintiff's material allegations in the complaint as true and construes them in the light most favorable to plaintiff.  Sands v. Lewis, 886 F.2d 1166 (9th Cir. 1989); Gorham v. Banovetz, 652 F.2d 750 (8th Cir. 1981).

ORDER - 9

The court does not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. Sprewell v. Golden State Warriors, 266 F.3d 979, 988, opinion amended on denial of rehearing, 275 F.3d 1187 (9th Cir. 2001)(citations omitted). "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." National Ass'n. for the Advancement of Psychoanalysis v. California Bd. of Psychology, 228 F.3d 1043, 1049 (9th Cir. 2000), cert. denied, 532 U.S. 972 (2001).

Federal Rules of Evidence 201 allows the court to take judicial notice of orders and decisions made by other courts or administrative agencies. Papai v. Harbor Tug and Barge Co., 67 F.3d 203, 207 n.5 (9th Cir. 1995), reversed on other grounds, 520 U. S. 548 (1997). The court may also take judicial notice of public records without converting a 12(b)(6) motion into a motion for summary judgment. Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994). A court ruling on a 12(b)(6) motion may also consider documents whose authenticity are not contested, and upon which the plaintiff's complaint necessarily relies, even though the documents are not specifically mentioned in the complaint, without converting the motion to dismiss to a motion for summary judgement. Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir.), cert. denied, 525 U.S. 1001 (1998).

There is no doubt regarding the authenticity of the bankruptcy documents that defendants refer to in their motion, the Tariff at issue, or the settlement documents submitted by defendants. Plaintiff's complaint necessarily relies upon the Tariff at issue and refers to it in his complaint. The court finds that it may properly consider these documents without converting the motion to dismiss to a motion for summary judgment.

### III. <u>DISCUSSION</u>

Defendants move to dismiss plaintiff's complaint arguing that: 1) Plaintiff's first and fourth claims are within the primary jurisdiction of the PUC as they challenge the tariff limitations of liability;

2) plaintiff's first and fourth claims are barred by the "Filed Tariff Doctrine";

3) plaintiff's first claim for relief fails as directory listing errors, absent gross negligence, which is not supported by plaintiff's complaint allegations, do not constitute violations of ORS 757.020;

4) plaintiff's second claim fails as plaintiff failed to allege that defendant Dex has any duty to accurately publish plaintiff's white pages listings - defendant Dex only publishes the Yellow Pages listings;

5) plaintiff's third claim for relief against defendant Dex should be dismissed for lack of mutuality of obligation - plaintiff does

ORDER - 11

not have any contractual obligation to defendant Dex and did not pay compensation or give any consideration for his Yellow Pages listing;

6) to the extent that plaintiff seeks to assert claims that were adjudicated and settled in the adversary proceeding in the bankruptcy court his claims are barred by res judicata.

In response, plaintiff argues that:

1) Defendants' motion depends upon matters outside the pleadings, such as PUC Tariff No. 29 and the terms of a settlement agreement in the bankruptcy proceeding, and, therefore should be treated as a motion for summary judgment or be denied;

2) defendants' primary jurisdiction argument depends upon facts outside the pleadings, and if limited to the complaint allegations, should be denied;

3) plaintiff sufficiently pleaded ultimate facts to support a claim for gross negligence;

4) plaintiff properly pleaded a claim under ORS 757.020 as the directory listing error was a result of defendants' gross negligence;

5) plaintiff's second claim for relief is a claim for errors in the Yellow Pages listing and defendants' arguments lack merit;

6) defendants' lack of mutuality argument depends upon facts outside the pleadings, that plaintiff did not pay for the Yellow Pages listing, and plaintiff pleaded that he paid consideration for

ORDER - 12

his White Pages listing, which in turn entitled him to a Yellow
Pages listing.  Therefore, defendants' motion should be denied;
7) res judicata and the settlement agreement do not bar plaintiff's
post-bankruptcy claims.

In reply, defendants argue that:
1) defendants' citation to a tariff does not convert their motion
to dismiss to a motion for summary judgment as a tariff is the law;
2) the holding in Garrison v. Pacific NW Bell, 45 Or. App. 523
(Or.App. 1980) requires dismissal of plaintiff's claims - Garrison
clearly bars claims for negligent directory listings; and
3) res judicata bars plaintiff's claim of gross negligence -
plaintiff cannot rely upon the same facts that were part of the
bankruptcy estates claims because these claims do not belong to him
- plaintiff's factual allegations of events that occurred after he
filed his bankruptcy claim do not support a finding of gross
negligence.

First Claim

Oregon law provides that the adequate service statute, ORS
757.020, is not violated by a directory error as long as it does
not involve gross negligence.  Garrison, 45 Or.App. at 530-531.
"Gross negligence is characterized by a state of mind which
indicates conscious indifference to the rights of others or to the
probable consequences of one's act."  Simpson v. Phone Directories
Co., 82 Or.App. 582, 580-581, review denied, 303 Or. 172 (1987).

ORDER - 13

In Simpson, plaintiff alleged that defendants were grossly negligent "in failing to list plaintiff in the directory as agreed, in failing to have a system for notifying recipients of the directories of errors in those directories and in failing to provide plaintiff with the addresses of all phones in the service area." Id. at 580. Plaintiff failed to allege that defendants acted with conscious indifference to plaintiff's rights or that defendants' conduct was wilful or wanton. Id. The court found that plaintiff's factual allegations were characteristic of simple negligence and the mere addition of the word grossly before negligent did not convert the claims into ones for gross negligence. Id. The court found that as a matter of law plaintiff's factual allegations did not state claims for gross negligence, and that plaintiff's claims for gross negligence were properly dismissed. Id.

In his third amended complaint, plaintiff alleges that defendant Qwest acted in a grossly negligent manner in issuing its March 2003 telephone directory with plaintiff's disconnected business number listed in the White Pages. (Third Amended Complaint at ¶19). Plaintiff also alleges that the acts and omissions reflected a conscious indifference to or reckless disregard of plaintiff's rights to have a correct and accurate listing of his business number in the White Pages. (Id.). Plaintiff's complaint goes on to list the acts and omissions which

ORDER - 14

reflected a conscious indifference or reckless disregard of plaintiff's rights. (Id.). All of the acts, except the publishing of the March 2003 directory, occurred prior to plaintiff filing bankruptcy. (Id.).

Under the doctrine of res judicata, the dismissal of a claim with prejudice bars a later suit. <u>Beard v. Sheet Metal Workers Union, Local 150</u>, 908 F.2d 474, 477 n. 3 (9th Cir. 1990). Res judicata also prevents parties from relitigating issues based upon specific factual matters that have been previously adjudicated by a court. <u>Rockwell Intern. Corp. v. Hanford Atomic Metal Trades Council</u>, 851 F.2d 1208, 1210 n. 1 (9th Cir. 1988).

On April 8, 2005, the bankruptcy court entered a Judgement of Dismissal with Prejudice in plaintiff's bankruptcy case. Under the doctrine of res judicata, plaintiff cannot rely upon any facts to support his present claims that supported the claims that were raised in the bankruptcy proceeding, including all events that occurred prior to September 9, 2002. Therefore, in ruling upon this motion to dismiss, the court will exclude all those factual allegations in determining whether plaintiff states a claim for relief.

The only factual allegation which supports plaintiff's claim of gross negligence, reckless disregard, and conscious indifference is the inaccurate publishing of plaintiff's business number in the White Pages in the March 2003 directory. These factual allegations

ORDER - 15

are insufficient as a matter of law to state a claim for gross negligence. See Simpson, 82 Or.App. at 585. Therefore, defendants' motion to dismiss plaintiff's first claim for relief is granted.

Second and Third Claims

Plaintiff's second and third claims are against defendant Dex for incorrectly listing plaintiff's disconnected business number in the Yellow Pages. Defendant Dex is responsible for the publication of the Yellow Pages, while defendant Qwest is responsible for the publication of the White Pages. (Third Amended Complaint at ¶¶ 2, 3, 25, 26, 27, 28, 31, 34). The March 2002 and March 2003 telephone directories correctly listed plaintiff's business number in the Yellow Pages. (Id. at ¶¶ 10, 13).

As of the date a party files for bankruptcy, any legal claims the party possesses become part of the bankruptcy estate. Howe v. Richardson, 193 F.3d 60, 61 (1st Cir. 1999), cert. denied, 529 U.S. 1021 (2000). Claims that accrue to the debtor after the bankruptcy is filed are not property of the bankruptcy estate, but property of the debtor. See In re Bobroff, 766 F.2d 797, 803 (3rd Cir. 1985).

Plaintiff filed for bankruptcy on September 9, 2002. Therefore, any claims against defendant Dex accrued before plaintiff filed for bankruptcy. Those claims belong to the bankruptcy estate, and were resolved in the bankruptcy case. Therefore, plaintiff's second and third claims are dismissed.

ORDER - 16

Fourth Claim

Plaintiff's fourth claim alleges that defendant Qwest breached an implied contract by inaccurately publishing his disconnected business number in the White Pages in the March 2003 telephone directory. (Third Amended Complaint at ¶¶ 36-39). Plaintiff's complaint then cites the PUC tariff, which provides for liability of companies for errors or omissions in customer telephone directory listings. (Id. at ¶37). Plaintiff then seeks, as a result of the breach of the implied contract, "damages equal in amount to the charge made upon the plaintiff for his 'exchange service' during the effective life of the March 2003 . . . telephone directory books . . ." (Id. at ¶40).

In cases of directory errors, the plain language of PUC Tariff No. 29 Sec.4.4(A) allows plaintiff to recover "the charge for exchange service . . .during the effective life of the directory containing the error or omission." Exchange Network Services Tariff § 2.4.4(A). Plaintiff's fourth claim for relief states a claim for relief that is in accordance with these terms. Therefore, defendants' motion to dismiss plaintiff's fourth claim is denied.

ORDER - 17

### III.  <u>ORDER</u>

Based on the foregoing, it is ordered that defendant's motion to dismiss (#27) is granted as to plaintiff's first, second, and third claims, and denied as to plaintiff's fourth claim.


DATED this ____19_____ day of April, 2007.


_____/s/_____
UNITED STATES DISTRICT COURT JUDGE

ORDER - 18